IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-00781-PAB

WENDY SPAULDING,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Wendy Spaulding's complaint [Docket No. 4], filed on April 6, 2009. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On March 8, 2007, Ms. Spaulding filed for disability benefits and supplemental benefits under the Act. R. at 112-22. She alleged a disability onset date of December 12, 2005. R. at 115. After Ms. Spaulding's claim was denied at the initial level, R. at 51-52, an Administrative Law Judge ("ALJ") conducted a hearing on September 11, 2008. R. at 22-42. The ALJ received testimony of a Vocational Expert ("VE") at this hearing. At this hearing, Ms. Spaulding's representative moved for an amended onset

date of January 19, 2006.  R. at 9.  On November 17, 2008, the ALJ issued a decision denying plaintiff's application for benefits.  R. at 9-19.

Plaintiff requested that the Social Security Administration Appeals Council review the ALJ decision and on February 6, 2009, the Appeals Council denied that request.  R. at 1-3.  Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter.  Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable.  See 42 U.S.C. § 405(g) (2006); Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court will not

"reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B.  The ALJ Decision

In his November 17, 2008 decision, the ALJ reached step five in the sequential five-step analysis.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 19, 2006, her amended alleged onset date.  R. at 11.  At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative changes of the lumbar spine and an affective disorder.  *Id.*  At step three, the ALJ concluded that Ms. Spaulding did not have an impairment or

combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  R. at 12.

The ALJ then turned to the task of determining plaintiff's RFC and found that Ms. Spaulding had

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she is restricted to no more than occasional bending, squatting, and kneeling and precluded from using foot or leg controls.  In deference to her mental impairments she is limited to work which involves only occasional interaction with the general public.

R. at 13.  In applying this RFC at step four, the ALJ found the plaintiff was not able to perform her past relevant work.  R. at 17.  At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  R. at 18-19.  In determining the number of jobs, the ALJ cited to and interpreted the Social Security Administration's Medical-Vocational Guidelines, as well as the testimony of the VE.  *Id.*  Based on his step-five findings, the ALJ concluded that Ms. Spaulding had not been under a disability, as it is defined under the Act, from her alleged onset date of January 19, 2006 through November 17, 2008, the date of the ALJ's decision.  R. at 19.

### C.  Plaintiff's Objections to the ALJ Decision

In her appeal, Ms. Spaulding objects to the ALJ's finding of no disability on two grounds: (1) the ALJ improperly rejected Ms. Spaulding's diagnosis of fibromyalgia; and (2) the ALJ failed to contact Dr. Warwick to clarify his opinion.  The Court addresses each of these objections in turn below.

### *1. Determination of Severe Impairments at Step Two*

Ms. Spaulding argues that the ALJ erred at step two of the five-step process by finding that Ms. Spaulding did not have the severe impairment of fibromyalgia. *See* Docket No. 22 [Pl.'s Opening Br.] at 6-10. Ms. Spaulding argues that remand is necessary because the ALJ improperly rejected the diagnosis of Ms. Spaulding's treating physician, Dr. Andrew Ingram. *See id.*

At step two, a claimant must show that, regardless of his age, education, and RFC, there exists more than the mere presence of a condition or ailment, or combination thereof, that meets the duration requirement of the regulations; however, he need only make a "de minimis" showing of such. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); see also 20 C.F.R. § 404.1520(a)(4)(ii). The Tenth Circuit has described this standard by explaining that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity." *Hinkle*, 132 F.3d at 1352.

Under the regulations, a "severe impairment" is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). "Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b). According to the regulations, examples of "basic work activities" include:

      (1)     Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
      (2)     Capacities for seeing, hearing, and speaking;
      (3)     Understanding, carrying out, and remembering simple instructions;
      (4)     Use of judgment;
      (5)     Responding appropriately to supervision, co-workers and usual work situations; and
      (6)     Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

The ALJ stated that he disregarded Dr. Ingram's diagnosis of fibromyalgia because the condition was not "verified by well-documented medical examinations showing, as defined by the American College of Rheumatology, widespread pain in all four quadrants of the body for a minimum duration of three months with at least 11 of the 18 specified tender points occurring about the neck and shoulders, chest, hip, knee and elbow regions." R. at 12. Dr. Spaulding's treatment notes list plaintiff's diagnosis of fibromyalgia and merely states that she had "numerous tender points throughout the body." R. at 544.

Despite plaintiff's argument that the ALJ erred in rejecting this diagnosis, it is clear that, even if this was an error, the error would have had little independent impact on the ultimate disability determination. At step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments

that are not 'severe,' as explained in §§ 404.1520(c), 404.1521 and 404.1523, when we assess your residual functional capacity."). Therefore, to the extent that the ALJ failed to consider all the evidence of Ms. Spaulding's impairments, severe and otherwise, this error would only impact the ALJ's finding as to disability if the ALJ disregarded an impairment such that he formulated Ms. Spaulding's RFC in error.

Plaintiff presents no evidence that the ALJ's disregarding Dr. Ingram's diagnosis of fibromyalgia resulted in an inaccurate RFC. The ALJ formulated plaintiff's RFC taking into account all of her symptoms. R. at 13. The record does not include any medical evidence suggesting that plaintiff's fibromyalgia resulted in her experiencing greater limitations than those provided in the RFC. Although Dr. Warwick opined that plaintiff had greater limitations, that opinion was based only on her diagnosis of degenerative changes of the lumbar spine and did not reference her fibromyalgia. *See* R. at 592-97. Therefore, even if the ALJ did err in disregarding plaintiff's diagnosis of fibromyalgia, this error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (error is harmless where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

### 2. The ALJ's Rejection of Dr. Warwick's Opinion

The plaintiff contends the ALJ erred by rejecting the opinion of her treating physician, Dr. Mark Warwick, as inconsistent without recontacting Dr. Warwick for clarification. Docket No. 22 at 10-12. Under the regulations, the ALJ must recontact a treating physician when the information the doctor provides is "inadequate . . . to determine whether [the claimant] is disabled." 20 C.F.R. § 416.912. The Tenth Circuit

has clarified that "it is the inadequacy of the 'evidence' received from the physician rather than the inadequacy of the record as a whole, or the rejection of the physician's opinion, that gives rise to the duty to recontact a treating physician." *Andersen v. Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (citing *White v. Barnhart*, 287 F.3d 903, 905, 908 (10th Cir. 2001)). Moreover, in *Andersen*, the Tenth Circuit held where an ALJ's only reason for rejecting a treating physician's opinion is the opinion's "confusing nature," the ALJ has a duty to recontact the physician. *See id.*

Here, the ALJ assigned "minimal weight" to Dr. Warwick's opinion for two reasons. First, he found the "opinion is unsupported by the objective findings regarding the claimant's back impairments, as well as Dr. Warwick's own treatment notes." R. at 17. The ALJ also found that Dr. Warwick's opinion was "internally inconsistent" because it stated that plaintiff was able to perform "all of her own activities of daily living . . . which would not be possible with the degree of physical limitation the physician attested to." *Id.* Plaintiff argues this second reason triggered the ALJ's duty to recontact Dr. Warwick because the ALJ's "only specific finding" was that Dr. Warwick's opinion was internally inconsistent. *See* Docket No. 24 at 3. This argument mischaracterizes the ALJ's opinion. The ALJ rejected Dr. Warwick's opinion both because it was "unsupported by the objective findings regarding the claimant's back impairments" or by Dr. Warwick's treatment notes and because it was inconsistent. The ALJ's first reason, that Dr. Warwick's statement was unsupported, was sufficiently specific and provided a good reason for rejecting his opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The section of Dr. Warwick's statement where

Dr. Warwick was supposed to "identify the particular medical or clinical findings" supporting his assessment did not list any such medical or clinical findings.  *See* R. at 596.  Although Dr. Warwick's treatment notes are somewhat difficult to read, see R. at 471-76, the plaintiff does not contest the Commissioner's contention that these treatment notes "contain no examination findings regarding" plaintiff's back pain beyond "a single notation that she was tender across her pelvis in March 2007."  Docket No. 23 at 27.  Thus the ALJ, unlike the ALJ in *Anderson*, provided multiple reasons for rejecting Dr. Warwick's opinion, *see Andersen v. Astrue*, 319 F. App'x at 728, and the information Dr. Warwick provided was adequate for consideration.  *See White*, 287 F.3d at 909.  Therefore, the ALJ did not err in rejecting Dr. Warwick's opinion.

## III.  CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law.  As a result, the Commissioner's decision is AFFIRMED.

DATED December 29, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge